IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JASMINE BUDZYN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 21-cv-4152 |
| KFC Corporation; KFC; FQSR, LLC; KBP Foods, LLC; JAMES JOHNSON JR. INDIVIDUALLY and as agent and/or employee of KFC Corporation, FQSR, LLC, and/or KBP Foods, LLC, | ) ) ) ) ) ) |
| Defendants. | ) |

## FQSR, LLC'S and KBP FOODS, LLC'S MOTION TO COMPEL ARBITRATION AND DISMISS PLAINTIFF'S COMPLAINT

Defendants FQSR, LLC and KBP Foods, LLC (collectively "KBP" or the "Company"), by and through its attorneys, J. Randall Coffey and Franklin Z. Wolf of Fisher & Phillips LLP, respectfully moves this Court pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3 and 4, for an order compelling arbitration of the Complaint at Law ("Complaint") filed by Plaintiff Jasmine Budzyn ("Plaintiff") and dismissing with prejudice Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).[1]

### Statement of Facts

Plaintiff was an employee of KBP at one of the Company's locations in Romeoville, Illinois. *See* Dkt. 1, ¶ 27. KBP hired Plaintiff in September 2019. *See id.* Further, Plaintiff was born on October 11, 2001. *See* Dkt. 1-1 (identifying date of birth). At the outset of Plaintiff's employment, she received and signed KBP's Arbitration Agreement which, in the pertinent part, states as follows:

---

[1] Alternatively, KBP requests that the Court stay the current proceedings pending the outcome of binding arbitration of Plaintiff's claims.

> Employer and Employee mutually agree that any and all disputes between them will be settled by binding arbitration. This mutual promise to arbitrate includes, but is not limited to, those disputes arising out of or relating in any way to Employee's application or applications for employment, any past, current, or future employment, and/or the cessation of employment with Employer, including but not limited to, any rights or claims Employee may have under any federal, state, or local law, including any statute, ordinance, regulation, code, order, or common law, including claims regarding employment discrimination, harassment, retaliation, wage and hour matters, breach of contract (express or implied), violation of public policy, wrongful termination, negligence or other torts, or otherwise, except as provided in paragraph (2) below. This mutual promise to arbitrate covers any and all disputes (past, present, and future) Employer and Employee now know about and those they may not know about.

*See* Arbitration Agreement, attached as Exhibit A ("Arbitration Agreement"); *see also* Declaration of Laura Gregory, attached as Exhibit B. The Arbitration Agreement further provided that the term "Employer" referred to "FQSR, LLC (d/b/a KBP Foods) and any of its parent, subsidiaries, affiliates and related companies, successors, and assigns, its supervisors, officers, directors, and/or agents, in their capacity as such." *See* Ex. A.

On approximately January 16, 2020 (more than three months after Plaintiff turned 18 years of age), Plaintiff resigned from her employment at KBP. *See* Ex. B, ¶¶ 13-14; *see also* Dkt. 1, ¶ 48; *see also* Dkt. 1-1. At no time during Plaintiff's employment did she take any steps to disaffirm the Arbitration Agreement. *See* Ex. B, ¶ 15.

On approximately June 16, 2020, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). *See* Dkt. 1-1. At no time during the EEOC's investigation did Plaintiff take any steps to disaffirm the Arbitration Agreement. *See* Ex. B, ¶ 15.

Then, on June 8, 2021, KBP specifically stated to Plaintiff's counsel that Plaintiff signed the Arbitration Agreement during her employment. *See* June 8, 2021 Email, attached as Exhibit C. In response (and thereafter), Plaintiff and Plaintiff's counsel did not take any steps to disaffirm the Arbitration Agreement. *See id.*; *see also* Ex. B, ¶ 15.

Despite the mutual agreement to arbitrate all claims arising between Plaintiff and KBP, Plaintiff filed her Complaint against KBP in this Court alleging claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and Illinois common law. *See* Dkt. 1, *generally*. As evidenced by the foregoing, Plaintiff's claims in her Complaint concern a dispute between herself and the Company. *See* Ex. A; *see also* Dkt. 1, *generally*. Significantly, Plaintiff *still* has not taken any steps to disaffirm the Arbitration Agreement.

## Legal Standard

The FAA governs questions of arbitrability in both federal and state courts. *Jain v. de Mere*, 51 F.3d 686, 688 (7th Cir. 1995). The FAA reflects a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Conception*, 563 U.S. 333, 131 S. Ct. 1740 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 214 (1983). Section 2 of the FAA provides that an arbitration clause in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts are to uphold and enforce applicable arbitration agreements according to their terms unless they are invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). Therefore, the standard for compelling arbitration is low. *Conway v. Done Rite Recovery Services*, Case No. 14-cv-5182 (N.D. Ill. Apr. 30, 2015). Moreover, arbitration agreements in the employment context are broadly enforceable under the

FAA. *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105 (2001). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Valuepart v. Faruhar*, Case No. 14-cv-3004 (N.D. Ill. Sept. 29, 2014).

To that end, courts in the Seventh Circuit have routinely enforced arbitration provisions. *See Tinder v. Pinkerton Sec.,* 305 F.3d 728, 736 (7th Cir. 2002) (holding that the plaintiff was bound to arbitrate her claims pursuant to an arbitration agreement); *Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 673 (7th Cir. 1999) (same); *Scaffidi v. Fiserv Inc.*, Case No. 05 C 1046, 2006 WL 2038348, *1, *15 (E.D. Wis. 2006) (same); *Dalope v. United Health Care*, Case No. 03 C 8919, 2004 WL 2325688, *1, *6 (N.D. Ill. 2004); *Grzanecki v. Darden Restaurants*, 2020 WL 1888917, *5 (N.D. Ill. 2020) (compelling arbitration of ADEA claim, among others). As the Seventh Circuit explained, "We [have] found, as have most other circuits, that Congress did not intend to prohibit the use of pre-dispute arbitration agreements for the resolution of Title VII claims." *Michalski*, 177 F.3d at 635. Accordingly, a "district court must promptly compel arbitration once it is satisfied that the parties agreed to arbitrate." *Tinder*, 305 F.3d at 735.

## **Argument**

This Court should compel Plaintiff to arbitrate her claims against the Company. Upon being presented with a motion to compel arbitration and stay judicial proceedings, this Court must make three determinations. First, the Court must determine whether there is a valid written agreement to arbitrate in place. *Prima Paint Corp. v. Flod & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967). Second, the Court must determine whether the dispute falls within the scope of the arbitration agreement. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Third, the Court must determine if the plaintiff has refused to arbitrate those claims, so as to warrant an order compelling arbitration. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417

F.3d 682, 687 (7th Cir. 2005) (*citing* 9 U.S.C. § 4). In this case, compelling arbitration is appropriate because there is a valid arbitration agreement and Plaintiff's Complaint falls within the scope of the Arbitration Agreement.

### I. The Arbitration Agreement is Valid and Binding.

There is no dispute that the Arbitration Agreement is a valid and enforceable contract. In considering the enforceability of an arbitration agreement, courts must first determine whether the dispute is subject to arbitration pursuant to a valid arbitration agreement. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002). Courts rely upon state contract law when determining whether there is a valid agreement to arbitrate. *See, e.g., James v. McDonald's Corp.*, 417 F.3d 672, 677 (7th Cir. 2005); *Gibson v. Neighborhood Health Clinics*, 121 F.3d 1126, 1130 (7th Cir. 1997). Under Illinois law, a valid contract consists of an offer, an acceptance, and consideration. *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 109 (Ill. 2006) (citing *Steinberg v. Chicago Med. Sch.*, 371 N.E.2d 634, 639 (Ill. 1977)). Plaintiff cannot dispute any of these elements. KBP offered and Plaintiff signed the Arbitration Agreement, and Plaintiff continued working for KBP. *See* Dkt. 1, ¶ 27; *see also* Ex. B, ¶¶ 4-15; *see also McNerney v. Charter Golf, Inc.*, 680 N.E.2d 1347, 1350 (Ill. 1997) (citing Restatement (Second) of Contracts § 71 (1981)) (stating that consideration is the bargained-for exchange of promises or performances and may consist of a promise, act, or forbearance).

### A. KBP Offered Plaintiff the Option to Agree to Mandatory Arbitration.

By virtue of Plaintiff being provided notice of the Arbitration Agreement, KBP "offered" the Arbitration Agreement for purposes of creating a valid and enforceable contract. *Melena*, 847 N.E.2d at 109. The provision of arbitration materials to an employee, even without further training on said materials, is sufficient to create an "offer" of an arbitration agreement. *Mecherle v.*

5

*Trugreen, Inc.*, 2012 WL 4097221, *4 (N.D. Ill. 2012). Here, Plaintiff cannot dispute that she received and had an opportunity to review it. *See* Ex. A; *see also* Ex. B, ¶¶ 4-12. Clearly, Plaintiff was "offered" the Arbitration Agreement as a consequence of KBP's provision of notice through its secure online environment. *See* Ex. A; *see also* Ex. B, ¶¶ 4-12; *Mecherle*, 2012 WL at *4.

Further, Plaintiff cannot avoid arbitration by asserting that she never read the materials. In *Tinder v. Pinkerton Security,* the Seventh Circuit held that the arbitration agreement between the plaintiff and the employer was valid even though the plaintiff claimed not to have received the arbitration program brochure. *See Tinder*, 305 F.3d at 736. The Seventh Circuit weighed the plaintiff's statement against the employer's evidence indicating that information regarding the arbitration agreement was sent and presumably received, and found that the arbitration agreement in question was valid. *Id.; see also Godfrey v. United States*, 997 F.2d 335, 338 (7th Cir. 1993). Thus, even if Plaintiff somehow denies that she was offered the Arbitration Agreement by virtue of not having read it, the clear evidence (documentary or otherwise) to the contrary meets the first element of a valid and enforceable contract. *See Tinder*, 305 F.3d at 736; *see also* Ex. B ¶¶ 4-12.

### B. Plaintiff Agreed to be Bound by the Arbitration Agreement.

Plaintiff's acceptance of the Arbitration Agreement also contributes to the Arbitration Agreement qualifying as a valid and enforceable contract. Plaintiff accepted the terms of the Arbitration Agreement in two manners: (1) by completing her electronic signature after logging into KBP's secure online environment with her unique username; (2) by agreeing to continued employment with KBP after being offered the terms of the Arbitration Agreement just prior to turning 18 years of age; and (3) ratifying the Arbitration Agreement after turning 18 years of age. *See* Section I.D., *infra*.

As to the first method, Plaintiff completing her electronic signature after logging into KBP's secure online environment with her unique username constitutes a binding acceptance. *Bauer v. Morton's of Chicago*, 2000 WL 149287, *2 (N.D. Ill. 2000) ("[The plaintiff] agreed to arbitration when she signed the Arbitration Policy Receipt."). In *Bauer*, the Court **presumed** acceptance of the at-issue arbitration policy where the plaintiff signed a policy receipt acknowledging that she had received and read the policy. *Id.* at **1-2. Such is the case here. The facts favoring acceptance are as strong as those in *Bauer*, as Plaintiff cannot dispute that she signed, and therefore accepted, the Arbitration Agreement. Ex. A; *see also* Ex. B, ¶¶ 4-15.

Regarding Plaintiff's second method of acceptance of the Arbitration Agreement, Plaintiff's continued employment with the Company after being notified of the Arbitration Agreement demonstrates her acceptance of the Arbitration Agreement. "Under Illinois law, continued employment after notice of an arbitration program constitutes acceptance and consideration."[2] *Mecherle*, 2012 WL at *5. It is undisputed that Plaintiff worked for KBP after her receipt of the Arbitration Agreement. *See* Dkt. 1; *see also* Ex. A; *see also* Ex. B, ¶¶ 4-15. Plaintiff accepted the Arbitration Agreement by virtue of her subsequent employment. *Mecherle*, 2012 WL at *5.

    **C.    Sufficient Consideration Exists to Render the Arbitration Agreement Valid and Enforceable.**

In support of the Arbitration Agreement, the parties each proffered sufficient consideration. For a contract to be enforceable under Illinois law, there must be consideration. *Melena*, 847 N.E.2d at 109. Consideration is the bargained-for exchange of promises or performances and may consist of a promise, an act or a forbearance. *McNerney v. Charter Golf, Inc.*, 680 N.E.2d 1347, 1350 (Ill. 1997) (citing Restatement (Second) of Contracts § 71 (1981)). Any act or promise which

---

[2] The parties' mutual provision of consideration is discussed in Section I.C., *infra*.

is of benefit to one party or disadvantage to the other is sufficient consideration to support a contract. *Steinberg*, 371 N.E.2d at 639. An employer's promise to be bound by the arbitration process itself serves as mutual consideration in the underlying arbitration agreement. *Michalski*, 177 F.3d at 636.

Here, the provisions in the Arbitration Agreement provide that ***each*** party is bound to arbitrate their claims against the other party. *See* Ex. A ("Employer and Employee mutually agree that any and all disputes between them will be settled by binding arbitration. This mutual promise to arbitrate includes, but is not limited to […]").[3] The Arbitration Agreement was not a one-sided bargain. Because there was a mutual waiver of the right to bring a civil action, there is adequate mutual consideration in the underlying arbitration agreement. *Michalski*, 177 F.3d at 636. Thus, the Arbitration Agreement is valid and binding as to its arbitration provisions.

### D. Plaintiff Ratified the Arbitration Agreement.

KBP further notes that the Arbitration Agreement is valid because Plaintiff has ratified the Arbitration Agreement upon attaining the age of majority. "A contract of a minor is not void *ab initio*, but merely voidable at the election of the minor upon his attaining majority. After attaining majority, a person may either disaffirm or ratify a contract that he entered into while he was still a minor." *Fletcher v. Marshall*, 260 Ill.App.3d 673, 675 (2nd Dist. 1994) (internal citations omitted); *see also Dixon Nat. Bank of Dixon v. Neal*, 5 Ill.2d 328, 336 (Ill. 1955) ("It is well established that contracts of minors which inure to their benefit are not void, but voidable only at the election of the minor on arrival at maturity."). "A contract of a minor is deemed ratified if the minor fails to disaffirm it within a reasonable time after attaining majority." *Fletcher*, 260

---

[3] The Arbitration Agreement defined the term "Employer" to be "FQSR, LLC (d/b/a KBP Foods) and any of its parent, subsidiaries, affiliates and related companies, successors, and assigns, its supervisors, officers, directors, and/or agents, in their capacity as such." *See* Ex. A.

8

Ill.App.3d at 675. "Once a person ratifies such a contract, he cannot thereafter avoid his obligations under it." *Id.*; *see also Sheller v. Frank's Nursery & Crafts, Inc.*, 957 F.Supp. 150, 153 (N.D. Ill. 1997) (noting that "the minor is not entitled to retain an advantage from a transaction which he repudiates") (internal citations omitted).

There is no dispute that Plaintiff's continued employment with KBP (and subsequent failure to disaffirm) constituted ratification of the Arbitration Agreement. As ***this*** Court has previously decided, the mere act continuing to work for an employer upon turning 18 years of age is sufficient to ratify an arbitration agreement. *See Nitka v. ERJ Dining IV, LLC*, 2018 WL 5884531, *2 (N.D. Ill. 2018) ("Lastly, Nitka ratified the agreement by going to work at ERJ upon turning eighteen."; "Nitka working her shift on June 5, 2017, the day after turning eighteen was an affirmative act indicating an intention to continue her employment and thereby affirm the conditions of her employment. Even if this Court considers opposition to the instant motion to be an attempt at disaffirming the arbitration agreement, she did not file her complaint in this action until May 8, 2018, nearly a year after ratification does not reference the arbitration agreement or disaffirm it. Accordingly, this Court finds that there is a valid written arbitration agreement.") (***Johnson Coleman, J.***).

In this matter, Plaintiff (1) signed the Arbitration Agreement on September 5, 2019 only one month before turning 18 years of age, (2) turned 18 years of age on October 11, 2019, and (3) continued working for KBP for more than three months after October 11, 2019. *See* Ex. A; *see also* Dkt. 1, ¶¶ 27, *generally* (containing allegations pertaining to November and December 2019); *see also* Dkt. 1-1; *see also* Ex. B, ¶¶ 4-15. Additionally, to this day, Plaintiff has never taken any steps to disaffirm the Arbitration Agreement, and her August 4, 2021 Complaint (filed ***22 months*** after Plaintiff reached majority and ratified the Arbitration Agreement, well more than the

approximate one-year time period identified in *Nitka*) is silent on the existence of the Arbitration Agreement and the subject of disaffirmation.⁴ *See* Dkt. 1; *see* Ex. B, ¶¶ 13-15. Plaintiff ratified the Arbitration Agreement, and it is valid and binding on the parties. *See Nitka*, 2018 WL 5884531 at *2 (finding ratification and lack of disaffirmation where the plaintiff complaint "nearly a year after ratification [and did] not reference the arbitration agreement or disaffirm it" (***Johnson Coleman, J.***).

## II. Plaintiff's Claims are within the Scope of the Arbitration Agreement.

The claims alleged in Plaintiff's Complaint are within the scope of the Arbitration Agreement. The Arbitration Agreement expressly provides that the "mutual promise to arbitrate includes, but is not limited to, those disputes arising out of or relating in any way to Employee's application or applications for employment, any past, current, or future employment, and/or the cessation of employment with Employer." *See* Ex. A. Plaintiff's alleged claims clearly relate to her employment with KBP. *See* Dkt. 1, *generally*; *see also* Ex. A. Although "any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration," there are no such doubts here. *Moses H. Cone*, 460 U.S. at 24-25; *see* Ex. A; *see also* Dkt. 1, *generally*. Plaintiff's Complaint falls within the scope of the arbitration provisions of the Arbitration Agreement.

## III. The Arbitration Agreement is Not Unconscionable.

To the extent that Plaintiff may argue that the Arbitration Agreement is somehow unconscionable, Plaintiff simply cannot sustain such an argument.⁵ Agreements to arbitrate may

---

⁴ Even if Plaintiff points to her counsel's June 8, 2021 email as potential evidence of disaffirmation, such an effort fails. Counsel's email only stated that it was his "initial impression of [the Arbitration Agreement is, [sic] she was a minor at the time of the signing and it is likely not binding." ***Twenty months after Plaintiff reached the age of majority***, counsel's statement is only his (incorrect) impression of enforceability, not specific disaffirmation. Thus, not only is counsel's impression untimely, it fatally is a case of "too little, too late."

⁵ KBP anticipates that Plaintiff may argue that the Arbitration Agreement is unconscionable and, therefore, briefly addresses Plaintiff's anticipated arguments herein. KBP, however, reserves its right to supplement

be invalidated only on grounds "generally applicable [to] contract defenses such as fraud, duress, or unconscionability." *Doctor's Assocs., Inc.*, 517 U.S. at 687. Because the Arbitration Agreement is neither procedurally nor substantively unconscionable, the Arbitration Agreement must be enforced, Plaintiff must be compelled to arbitrate all claims in her Complaint, and this action must be dismissed.

### A. The Arbitration Agreement is Not Procedurally Unconscionable.

Likewise, nothing in this case suggests that the Arbitration Agreement is procedurally unconscionable. Procedural unconscionability "requires a court to consider the circumstances surrounding a transaction including the manner in which the contract was entered into, and whether each party had a reasonable opportunity to understand the terms of the contract." *Levey v. CitiMortgage, Inc.*, 2009 WL 2475222, *4 (N.D. Ill. 2009) (internal citations omitted). Unequal bargaining power alone, however, is insufficient to make an arbitration agreement an adhesion contract. *Williams v. Jo-Carroll Energy, Inc.*, 912 N.E.2d 310 (5th Dist. 2009).

Here, Plaintiff decided to sign the Arbitration Agreement and work for KBP after being provided with sufficient time and opportunity to review the terms of the Arbitration Agreement before she agreed to such terms. *See* Dkt. 1; *see also* Ex. B, ¶¶ 4-15. Because there is no basis for any argument that the Arbitration Agreement is procedurally unconscionable, the Arbitration Agreement should be enforced and Plaintiff should be compelled to arbitrate her Complaint.

### B. The Arbitration Agreement Is Not Substantively Unconscionable.

Similarly, the Arbitration Agreement is not substantively unconscionable. Substantive unconscionability "looks to the fairness of the term itself." *Montgomery v. Corinthian Colleges, Inc.*, 2011 WL 1118942, *5 (N.D. Ill. 2011). "Contract terms are substantively unconscionable

---

or add to its position regarding unconscionability so as to further address any additional arguments that Plaintiff may make in opposition to this Motion.

when they are: (1) so one-sided as to be oppressive; (2) imbalanced in the rights and obligations they impose; and (3) when there is a significant cost-price disparity, which involves a comparison of the cost of bringing an arbitration proceeding versus the damages the plaintiff can expect to receive." *Id.*

None of the factors concerning substantive unconscionability are present here. The Arbitration Agreement does not limit any of Plaintiff's remedies by compelling arbitration. The Arbitration Agreement does not impose any unreasonable fees or payments on Plaintiff by compelling arbitration. There is no issue of unequal access to courts in that both Plaintiff and KBP are equally bound in their obligations to arbitrate their disputes against the other. Ex. A. The terms of the Arbitration Agreement are not unreasonably or grossly favorable to one side or the other. Therefore, the Arbitration Agreement also is not substantively unconscionable and should be enforced.

## **Conclusion**

Plaintiff agreed to submit any claims arising out of the Arbitration Agreement she might have against KBP to binding arbitration, an agreement she affirmed by continuing to work for KBP for months after reaching the age of majority. Plaintiff cannot now be allowed to circumvent her obligation to arbitrate by filing her Complaint in this Court. Consequently, KBP respectfully requests that this Court grant its Motion to Compel Arbitration and Dismiss Plaintiff's Complaint dismissing with prejudice Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).[6]

*Signature page to follow*

---

[6] Alternatively, KBP requests that the Court stay the current proceedings pending the outcome of binding arbitration of Plaintiff's claims.

Dated:  December 16, 2021

                    Respectfully submitted,

                    */s/ Franklin Z. Wolf*
                    One of FQSR, LLC's and KBP Foods, LLC's Attorneys

Franklin Z. Wolf
Fisher & Phillips LLP
10 S. Wacker Drive, Suite 3450
Chicago, Illinois 60606
(312) 346-8061
fwolf@fisherphillips.com

J. Randall Coffey (*pro hac vice*)
Fisher & Phillips LLP
4900 Main Street, Suite 650
Kansas City, MO 64112
(816) 842-8770
rcoffey@fisherphillips.com

# CERTIFICATE OF SERVICE

    I, Franklin Z. Wolf, HEREBY CERTIFY that on December 16, 2021, I electronically filed the foregoing **FQSR, LLC'S AND KBP FOODS, LLC'S MOTION TO COMPEL ARBITRATION AND DISMISS PLAINTIFF'S COMPLAINT** via the CM/ECF electronic filing system, which will send a notice of electronic filing to all counsel of record.

Dated: December 16, 2021

Respectfully submitted,

*/s/ Franklin Z. Wolf*
One of FQSR, LLC's and KBP Foods, LLC's Attorneys

Franklin Z. Wolf
Fisher & Phillips LLP
10 S. Wacker Drive, Suite 3450
Chicago, Illinois 60606
(312) 346-8061
fwolf@fisherphillips.com

J. Randall Coffey (*pro hac vice*)
Fisher & Phillips LLP
4900 Main Street, Suite 650
Kansas City, MO 64112
(816) 842-8770
rcoffey@fisherphillips.com