**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JASMINE BUDZYN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KFC CORPORATION, KFC, FQSR, LLC, | ) | |
| KBP FOODS, LLC, JAMES JOHNSON JR. | ) | Case No. 21 cv 04152 |
| INDIVIDUALLY And as agent and/or | ) | |
| employee of KFC CORPORATION, KFC, | ) | |
| FQSR, LLC, and/or KBP FOODS, LLC | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS', KFC CORPORATION AND KFC, MOTION TO DISMISS

NOW COMES, the Plaintiff, JASMINE BUDZYN, by and through her attorneys, LEVIN, RIBACK, & ADELMAN, PC and responds to the Defendants', KFC and KFC Corporation (collectively "Franchisor Defendants"), Motion to Dismiss Plaintiff's First Amended Complaint at Law, pursuant to Federal Rules of Civil Procedure 12(b)(6), states as follows:

### Statement of Facts

On December 28, 2019, the Plaintiff, Jasmine Budzyn, born on October 11, 2001, was raped by her manager, Co-Defendant James Johnson, Jr. (hereafter "Johnson"), while working at a Kentucky Fried Chicken ("KFC") restaurant in Romeoville, Illinois. See Dkt. 1, ¶27. Ms. Budzyn's rape was the last in a series of inappropriate and abusive acts she was forced to endure after KFC transferred Johnson to the Romeoville location following his improper conduct at a different KFC location in Joliet. KFC and KFC Corporation, are the corporate franchise owners of restaurants known as Kentucky Fried Chicken. Co-Defendants, FQSR, LLC and KBP FOODS, LLC, were the franchisee owners of two specific locations: KFC in Joliet, Illinois and KFC in

Romeoville, Illinois. The Franchisor Defendants allowed Co-Defendants to use the KFC name and logo on the restaurant, sell the Franchisor Defendants' food products and merchandise, hire employees to the benefit of the franchise, have employees greet and represent to patrons they are at KFC, and wear uniforms bearing the Franchisor Defendants' KFC name and logo.

When Ms. Budzyn first applied to work at the KFC in Romeville, Illinois, she reasonably believed she was working for the Franchisor Defendants and that she was a KFC employee. When Ms. Budzyn was hired to work at the KFC in Romeoville, Illinois, she was only 17 years old, a minor. Upon hiring she was sent an email by her manager, Tiffany Ollie, regarding her employment at KFC. (See 09/05/2019 Email, Exhibit A). That email states, "KBP Foods is pleased to extend an offer of employment to you as a ***KFC Team Member***…". (Emphasis added.) *Id.* When Ms. Budzyn spoke to patrons, she held out that she worked on behalf of the Franchisor Defendants. As Ms. Budzyn worked with her fellow employees, it appeared that she was working for the Franchisor Defendants as each employee wore uniforms bearing the KFC name and logo. When Ms. Budzyn met Johnson, she knew his title to be manager of KFC. There was never any indication or notification the Franchisor Defendants were not her employer. Ms. Budyzn's work uniforms did not have any logos from FQSR, LLC or KBP FOODS, LLC on them, they had the Franchisor Defendant's name and logo. Ms. Budzyn could not reasonably have known she was not working for the Franchisor Defendants because of a complicated franchisor/franchisee legal relationship. For all intents and purposes, in Ms. Budzyn's mind, she was a KFC worker and was always working on behalf and for the benefit of the Franchisor Defendants.

When Johnson first started harassing Ms. Budzyn, she immediately reported the harassment, and each occurrence thereafter, to her manager, Tiffany Ollie. Like all employees at the KFC Romeoville location, Ms. Ollie held herself out as working for the Franchisor Defendants.

2

Ms. Ollie sold merchandise and food products on behalf of the Franchisor Defendants. Ms. Ollie wore a uniform bearing the Franchisor Defendants' logo and name. Ms. Ollie had the responsibilities and authority to interview, hire, retain, and terminate employees at KFC in order to decide whom she thought reflected the ideals of the franchise. Ms. Ollie was the only person in charge of scheduling employees' shifts at the restaurant. Ms. Ollie, along with Mario Perea, was in charge of running the entire restaurant, and was, to the naked eye, working on behalf of the Franchisor Defendants. When Ms. Ollie was first informed by Ms. Budzyn of Johnson's behavior and actions, she disregarded Ms. Budzyn's complaints and continued to schedule Ms. Budzyn with Johnson. As the manager of KFC, Ms. Ollie was in charge of the restaurant and represented the interests of the Franchisor Defendants. Ms. Ollie knew that allegations of sexual harassment by a fellow employee were not to be taken lightly or ignored. Ms. Ollie was given explicit information that Johnson made lewd comments to Ms. Budzyn, tried and succeeded in kissing Ms. Budzyn on the mouth, attempted and successfully groped Ms. Budzyn, and stalked Ms. Budzyn by phone and on social media. Ms. Ollie, as the Franchisor Defendants' employee, did nothing to hold Johnson responsible or to protect Ms. Budzyn from Johnson's predatory behavior. Ms. Ollie continued to schedule Johnson and Ms. Budzyn on the same shifts together despite the detailed and well documented complaints made by Ms. Budzyn about Johnson's harassing behavior. The Franchisor Defendants, through Ms. Ollie, had thorough knowledge and notice about Johnson's lewd and harassing behavior towards Ms. Budzyn and failed to take any action.

Moreover, complaints were made to the Franchisor Defendants' regional supervisor, Mario Perea, about Johnson, when Johnson was an employee at the Romeoville location. Mr. Perea oversaw the KFC restaurants and was in charge of monitoring these KFC restaurants at the Romeoville and Joliet locations. Mr. Perea has always held himself out as an employee for the

3

Franchisor Defendants while he worked in a supervisory capacity at the Franchisor Defendants' restaurants. Mr. Perea had prior knowledge that Johnson was harassing employees and patrons at the KFC Joliet location. Mr. Perea, as agent of the Franchisor Defendants, had the ability to fire managers and employees of the Franchisor Defendants. Instead of firing Johnson, Mr. Perea kept Johnson, as an employee and manager of the KFC in Romeoville. Mr. Perea, as an agent of the Franchisor Defendants, knowingly kept Johnson, despite his predatory behavior and even promoted him to a position with greater responsibility and authority. Mr. Perea had knowledge that Johnson, an alleged sexual harasser, was allowed to be transferred to the KFC Romeoville location from the KFC Joliet location. The evidence will confirm that Mr. Perea was a decision maker with respect to Johnson's transfer. Despite the Franchisor Defendants previous knowledge of Johnson, at the KFC Joliet location and the Franchisor Defendants' knowledge of Johnson's conduct towards Ms. Budzyn, the Franchisor Defendants took no action to protect Ms. Budzyn by either firing Johnson or separating Ms. Budzyn and Johnson's work schedules. Instead, Ms. Budzyn was scheduled by the Franchisor Defendants to work with Johnson. Ms. Budzyn was continuously harassed and assaulted by Johnson, at the Franchisor Defendants' restaurant, during the Franchisor Defendants' restaurant of operation, on a frequent basis. As a result, Ms. Budzyn was raped by Johnson, December 28, 2019, on the Franchisor Defendants' restaurant premises, in the Franchisor Defendants' restaurant bathroom, while the Franchisor Defendants' restaurant was still in operation, and while Johnson wore the Franchisor Defendants' uniform which bore the Franchisor Defendants' name and logo. On January 16, 2020, Ms. Budzyn was constructively discharged from her employment with the Franchisor Defendants after the sexual attack by Johnson, as no action was taken against Johnson despite Ms. Ollie and Mr. Perea being immediately notified of the occurrence.

4

## Legal Standard

A motion under Rule 12(b)(6) challenges the sufficiency of the plaintiff's complaint. *Christensen v. Cnty. of Boone, IL.*, 483 F.3d 454, 457 (7th Cir. 2007). Under the federal notice pleading standards, a complaint must "state a claim of relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, the complaint "need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008); *see also* Fed. R. Civ. P. 8(a)(2).

In reviewing a motion to dismiss under Rule 12(b)(6), this court must accept as true all well-pleaded allegations in the complaint and must draw all possible inferences in the plaintiff's favor. *See Tamayo*, 526 F.3d at 1081. A federal court interpreting state law is required to determine how the state's highest court would rule; it bases its predictions on the decisions of the state's highest court and considers decisions of intermediate appellate courts unless there is good reason to doubt the state's highest court would agree with them. *Anicich v. Home Depot U.S.A., Inc.*, 852 F.3d 643, 648 (7th Cir. 2017). Applying Illinois law, and construing the allegations in her favor, Ms. Budzyn's Complaint is more than sufficient on its face and the Franchisor Defendants' Motion must be denied.

## ARGUMENT

I. **Ms. Budzyn Alleged Sufficient Facts to Conclude that the Franchisor Defendants are Her Joint Employers and are Liable for Johnson's Conduct and the Failures of its Employees**

The Franchisor Defendants' Motion must be denied because the Complaint more than sufficiently alleged facts which, if true, would establish a joint employer relationship with the Franchisee Defendants. "A joint employer relationship may exist for purposes of a Title VII action when two entities exercise significant control over the same employees." Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq. "While a franchise agreement may clearly show the intent of the parties to exclude an agency relationship and establish that the franchisee is an independent contractor, such a declaration in and of itself does not control a court's determination." *Mann v. Prudential Real Estate Affiliates, Inc.*, 1990 WL 205286, 2 (N. Dist. 1990). "Circumstances may negate the intent of the agreement." *Id.* "Where a sufficient degree of control is exercised by the franchisor, an agency relationship may be created notwithstanding a clear declaration to the contrary in the franchise agreement between the parties." *Id.* at 3, *Citing Slates v. International House of Pancakes, Inc.,* 413 N.E.2d 457 (4th Dist. 1980). "It becomes a question of the type and amount of control as a certain amount of control by the franchisor is recognized as acceptable to exercise control over its franchisee to protect its name, goodwill, trademarks, and service marks." *Id.* at 4. "It must be determined whether the control over the franchisee's operations establish a principal/agent relationship under Illinois law." *Id.*

With these principles in mind, Ms. Budzyn has sufficiently pled that the Franchisor Defendants franchised KFC restaurants to Co-Defendants, KBP FOODS, LLC and FQSR, LLC. She has sufficiently pled that the Franchisor Defendants allowed Co-Defendants to advertise the KFC name and logo on the following: the restaurant, food products/merchandise, and for employees to wear uniforms with the KFC name and logo. The Co-Defendants, FQSR and KBP

Foods, hired employees to the benefit of the Franchisor Defendants to sell the Franchisor Defendants' products.[1] There is without question a connection between Ms. Budzyn and the Franchisor Defendants. Ms. Budzyn was hired to work at the KFC in Romeoville and to sell the Franchisor Defendants' products and merchandise. Ms. Budzyn was instructed to inform patrons they are at the Franchisor Defendants' restaurant. The purpose of the Complaint is to show a factually plausible connection between the Plaintiff and the Franchisor Defendants. The Plaintiff has done that in her Complaint.

## II.     Defendants' Motion Improperly Relies Upon Facts Outside the Pleadings.

The Plaintiff pled the Franchisor Defendants were responsible for regulating managers, specifically Johnson, at the restaurants.  Those well-pleaded facts are taken as true at this stage. All of the Franchisor Defendants' arguments in their Motion to Dismiss are premature and without merit.  The Franchisor Defendants, without factual support, have asked this Honorable Court to ignore these facts without providing any legitimate evidence or testimony to support their position. This Motion, while fashioned as a 12(b)(6) is, in fact, a Motion for Summary Judgment and premature. The Franchisor Defendants want this Court to take as fact their representations that they are solely a franchisor and had no control over the employees at the KFC in Joliet and Romeoville.  They want this Court to disregard the well pled facts showing the relationship despite the legal standard of a 12(b)(6) Motion.  Rule 12(d) requires a court to treat a Rule 12(b)(6) motion as one for summary judgment if  "matters outside the pleadings are presented to and not excluded

---

[1] The Franchisor Defendants advertised that these specific restaurants were their own restaurants on the KFC Website. (See Website Advertisements, Exhibit B). Nothing on the website mentions anything about the restaurants being operated, franchised, or maintained by Co-Defendants. No reasonable person, like Ms. Budzyn, could have believed that the Franchisor Defendants did not own or operate the KFC Restaurants through their own advertisements. The Franchisor Defendants' own advertisements are sufficient proof to show they are owners of the restaurant and the Franchisor Defendants have an interest in the restaurants and their operation.

by the court." Fed. R. Civ. P. 12(d).  Before converting the motion, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*

In the current matter, the Plaintiff has not been given a reasonable opportunity to obtain any evidence as discovery has been stayed. (See 02/22/22 Order, Exhibit C).  Written and oral discovery will likely show that there are employment manuals, procedures, policies, safety guides, security manuals, and/or meeting logs that illustrate the Franchisor Defendants' control and operation of each restaurant. The employment manuals, procedures, policies, and/or safety guides could have been created, implemented, and/or instructed by the Franchisor Defendants to be used by the Co-Defendants, FQSR and KBP Foods, to use in their everyday operation of the restaurants. Additionally, the Franchisor Defendants could have installed, instructed, implemented safety procedures and surveillance to be used by the Co-Defendants in their everyday operation of the restaurants.

This very issue was decided in *Decker v. Domino's Pizza, Inc.*, when a robbery occurred at a Domino's Pizza restaurant and an employee (Decker) was injured in the robbery. *Decker v. Domino's Pizza, Inc.*, 644 N.E.2d 515 (5th Dist. 1994). Domino's Pizza, Inc. was the franchisor of the restaurant and was sued for the injuries the Plaintiff sustained. *Id.* The Fifth District Illinois Appellate Court upheld the jury verdict finding the Defendant, Domino's Pizza, Inc., as franchisor, liable for the Plaintiff's injuries. *Id.* In coming to their decision, the appellate court stated there was enough evidence to prove Domino's Pizza, Inc. had sufficient involvement in the restaurant as, "…the defendant voluntarily undertook to establish a security program to deter robbery and to protect its employees from harm in the event of a robbery." *Id.* at 519. Not only did the jury find that Domino's Pizza, as franchisor had involvement at the restaurant, but Domino's was not dismissed on a Motion to Dismiss, Motion for Summary Judgment, or even a Judgment

Notwithstanding the Verdict. Clearly, Illinois law supports exploration through discovery the potential relationship between a franchisee and franchisor.

This case is clearly analogous to *Decker*. Once discovery commences, the Plaintiff has properly pled that she anticipated there will be documentation that shows the Franchisor Defendants had involvement with the hiring procedures, firing procedures, sexual harassment policies, and/or the security system in place at the Romeoville restaurant. The Plaintiff has pled extensive facts to show the Franchisor Defendants had knowledge of Johnson's predatory background. Any documentation of any sort showing that the Franchisor Defendants knew of Johnson's harassment allegations at the KFC in Joliet and the transfer of Johnson to the KFC in Romeoville is sufficient in proving active control by the Franchisor Defendants. Lastly, the Franchisor Defendants may have provided sexual harassment training manuals, employment manuals and videos that discuss employees conduct at the restaurants that Co-Defendants had to utilize as part of the franchising agreement. The Plaintiff has pleaded facts that show a factually plausible connection between the Franchisor Defendants and the Plaintiff, and the Franchisor Defendants' premature Motion to Dismiss must be denied.

**III.    Ms. Budzyn's Complaint Sufficiently Pled a Plausible Basis for Liability Against the Defendants KFC and KFC Corporation.**

Franchisor Defendants allege that the Plaintiff cannot show a reasonable connection to prove any liability against them. As set forth below, their arguments are without merit because the facts, as pled in the Complaint, plausibly establish the existence of an actionable relationship between the parties. "Even when one has not created the risk of harm, a duty to take affirmative action to aid another may arise where a legally recognized "special relationship" exists between the parties." *Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1097 (5th Dist. App. 2010). *Citing Rhodes*, 172 Ill.2d at 232, 216 Ill.Dec. 703, 665 N.E.2d 1260. "Such duties are, indeed, premised

9

upon a relationship between the parties that is independent of the specific situation which gave rise to the harm." *Id.* at 98. "We (Illinois Courts) have recognized four relationships that give rise to an affirmative duty to aid or protect another against an unreasonable risk of physical harm: "common carrier and passenger, innkeeper and guest, custodian and ward, and possessor of land who holds it open to the public and member of the public who enters in response to the possessor's invitation."" *Id. Citing Marshall*, 222 Ill.2d at 438, 305 Ill.Dec. 897, 856 N.E.2d 1048. "We (Illinois Courts) have also recognized a duty to a third party to control the individual who is the source of the harm when a defendant has a special relationship with that person, such as a parent-child relationship (see *Norskog v. Pfiel*, 197 Ill.2d 60, 84, 257 Ill.Dec. 899, 755 N.E.2d 1 (2001); Restatement (Second) of Torts § 316 (1965)) and a master-servant or ***employer-employee relationship*** (italics and bold added for emphasis) (see *Hills v. Bridgeview Little League Ass'n*, 195 Ill.2d 210, 231, 253 Ill.Dec. 632, 745 N.E.2d 1166 (2000); Restatement (Second) of Torts § 317 (1965))." *Id.*

The Franchisor Defendants undoubtedly have a special relationship with Johnson as he was an employee and manager of the Franchisor Defendants. Since Johnson was a manager of the Franchisor Defendants, the Franchisor Defendants had an affirmative duty to act to protect Ms. Budzyn from her harassing and abusive superior. The Franchisor Defendants had every obligation to make sure the work environment at KFC in Romeoville was free from any threatening or inappropriate behavior. Johnson was causing harm to Ms. Budzyn as he was making forceful and outrageous sexual advances towards her. As the Franchisor Defendants clearly had knowledge of Johnson's conduct towards Ms. Budzyn, the situation called for a prompt response to protect their employee, Ms. Budzyn. The Franchisor Defendants breached their affirmative duty to resolve the matter, which created a work environment that promoted Johnson's heinous and disturbing

behavior towards Ms. Budzyn. As a result of the Franchisor Defendants' failure to take action, Johnson was given implicit permission to continuously harass Ms. Budzyn without consequence. This ultimately led to Johnson sexually assaulting Ms. Budzyn, at the Franchisor Defendants' restaurant, in the Franchisor Defendants' bathroom, during the hours of operation. Undoubtedly, the Plaintiff has established a legitimate connection of liability showing through the pleadings that the Franchisor Defendants exercised some degree of control over the employees at the restaurant and their failure to act led to this rape on their premises.

It is well settled that employers, like the Franchisor Defendants, are responsible and liable for the tortious conduct of their supervisory personal, including tortious acts that involve sexual harassment and sexual assault. As the Seventh Circuit held in *Anicich*:

> Under Illinois law, as predicted by Seventh Circuit Court of Appeals, use of supervisory authority to commit a tort outside the scope of employment could be a basis for employer's liability for negligent hiring, supervision, and retention; there was no reason to hold an employer liable for tortious abuse of its chattels but not for the tortious abuse of supervisory authority.
> …
> In order to satisfy the foreseeability component of a claim for negligent hiring, supervision, or retention under Illinois law, it is not necessary that a defendant must have foreseen the precise nature of the harm or the exact manner of occurrence; it is sufficient if, at the time of the defendant's action or inaction, some harm could have been reasonably foreseen.
> *Anicich v. Home Depot U.S.A., Inc.*, 852 F.3d 643, 651, 654 (7th Cir. 2017).

The case at hand is very similar to *Anicich v. Home Depot U.S.A., Inc.* In *Anicich,* the Seventh Circuit had to decide whether an employee's "'particular unfitness...rendered the plaintiff's injury foreseeable to a person of ordinary prudence in the employer's position.'" *Anicich*, 852 F.3d at 654 (7th Cir. 2017) (quoting *Van Horne v. Muller*, 185 Ill. 2d 299, 313, 235 Ill.Dec. 715, 705 N.E.2d 898 (1998)). The decedent was a 22–year–old employee, who was murdered and raped by

her supervisor. *Id.* at 643. Throughout her employment at Home Depot, she was consistently sexually harassed and demeaned by her supervisor who had a history of harassing other female employees. *Id.* at 646. The supervisor insisted that the decedent accompany him to a family wedding in Wisconsin, and threatened to cut the decedent's hours if she declined. *Id.* She went with him to the wedding. *Id.* After the wedding, the supervisor attempted to have sexual relations with her, but she declined. *Id.* Additionally, the decedent was six months pregnant at the time. *Id.* After being rejected, the supervisor murdered and raped her. *Id.* The decedent's estate brought suit against Home Depot U.S.A., Inc., Grand Service LLC, and Grand Flower Growers, Inc. *Id.* at 648. The trial court dismissed the Plaintiff's complaint against all the defendants, stating the defendants owed no duty to the decedent. *Id.*

The Seventh Circuit disagreed, reasoning that for purposes of the defendants' 12(b)(6) Motion, the defendants owed the decedent a duty of care to protect her from her supervisor, who was known to be abusive. *Id.* at 650. After discussing the federal statutes that could impose liability for failing to discipline those harassing employees, the court examined Illinois law regarding liability for negligent hiring, supervision, or retention and held that, pursuant to the Restatement (Second) of Torts § 317(a) (1965), it believed that the Illinois Supreme Court would find that a tortfeasor's use of supervisory authority would provide a basis for employer liability, even though the crime occurred off-premises. *Id.* at 650-651. The *Anicich* case illustrates a special relationship and an employer's duty to safeguard its employees from sexually harassing behavior and extended that duty beyond the workplace.

In the current case, the Franchisor Defendants hired Johnson to be manager of the KFC at Romeoville. Before working at the Romeoville location, Johnson had been hired to work and manage the Joliet KFC. Like the supervisor in *Anicich*, the Franchisor Defendants had prior

knowledge of Johnson's history of harassing employees at the Joliet KFC. Instead of terminating Johnson, the Franchisor Defendants transferred Johnson to the Romeoville KFC where he began sexually harassing and sexually assaulting Ms. Budzyn. The Franchisor Defendants were well aware of Johnson's inappropriate behavior to Ms. Budzyn, as Ms. Budzyn routinely reported each incident to Ms. Ollie who took no action. The Franchisor Defendants received multiple complaints about Johnson and did nothing, allowing Johnson to continue to harass Ms. Budzyn. Like in *Anicich*, the Franchisor Defendants owed Ms. Budzyn a duty to protect her from their supervisor, Johnson, as they possessed sufficient knowledge of Johnson's actions. Moreover, the majority of these horrid acts committed by Johnson, including the rape, that occurred on December 28, 2019, took place at Franchisor Defendants' restaurant. There was without question a duty owed by the Franchisor Defendants to protect Ms. Budzyn, as the Seventh Circuit Appellate Court stated in *Anicich*. This matter cannot be decided on a 12(b)(6) Motion to Dismiss, as the Seventh Circuit Appellate Court stated in *Anicich*, when there was a clearly a duty owed by the Franchisor Defendants. The Plaintiff has sufficiently pled facts in her Complaint to show the Franchisor Defendants are liable, and the Franchisor Defendants' Motion to Dismiss should be denied.

**IV.    The Worker's Compensation Act is Not Applicable.**

Lastly, the Franchisor Defendants make a baseless accusation that they are protected from any liability through the Worker's Compensation Act if they are found to be an employer. The Franchisor Defendants' Motion must be denied because The Worker's Compensation Act only applies to the immediate employer. "If a parent company and its subsidiary are operated as separate entities, only the entity that was the immediate employer of the injured worker is entitled to section 5(a) immunity." *Munoz v. Bulley & Andrews, LLC*, 2022 IL 127067, ¶29. *Citing Forsythe*, 224 Ill. 2d at 297-98. The exclusive remedy provisions under sections 5(a) and 11 of the [Workers

Compensation] Act do not extend to a general contractor who is not the employee's immediate employer. *Id.* at ¶2.

The facts alleged sufficiently show the Franchisor Defendants are an employer of the Plaintiff, but not the immediate employer of the Plaintiff. The Franchisor Defendants owed a duty to protect Ms. Budzyn from being raped by one of their employees, Johnson. Moreover, the Plaintiff has properly alleged that one or more of its employees could have prevented this attacked. This situation was similarly discussed by the Illinois Supreme Court in *Munoz v. Bulley & Andrews, LLC.*

In *Munoz*, the Plaintiff hurt his back trying to move a covering/tarp at work. *Munoz v. Bulley & Andrews, LLC*, 2022 IL 127067. The Defendant, Bulley & Andrews, hired the Bulley Concrete to perform work at a site where the Plaintiff was injured. The Plaintiff was employed and worked for Bulley Concrete. *Id.* The Defendant was the parent company of Bulley Concrete. *Id.* The Defendant argued they were immune from liability under The Workers' Compensation Act as they paid Workers' Compensation benefits. *Id.* The Illinois Supreme Court stated non-employers cannot claim immunity under The Workers' Compensation Act as that right exists only with the immediate employer. *Id.* at ¶29. As the Illinois Supreme Court reasoned:

> Section 5(a) of the Act includes no category granting non-employers of the injured worker the ability to acquire immunity by either paying workers' compensation insurance premiums on behalf of the injured worker's direct employer or compensation benefits directly, as Bulley & Andrews did here. Nor does the Act make any provision for an entity that is legally distinct from the immediate employer to insulate itself against liability for its negligence by paying workers' compensation insurance premiums or benefits on behalf of the immediate employer of an injured worker. See *Burge v. Exelon Generation Co.*, 2015 IL App (2d) 141090, ¶ 14. To recognize a means by which immunity may be purchased by a general contractor who is not the injured worker's immediate employer would be contrary to the intended purpose of the Act. *Id.* Moreover, while the Act bars an employee from bringing a civil suit directly against his or her employer, it does not limit the employee's recovery from a third-party general contractor. See 820 ILCS 305/5(a), (b) (West 2016). The "injured employee may also have a cause of action

14

against a third party to the employment relationship, such as a general contractor, whose negligence allegedly caused or contributed to the employee's injuries." *Virginia Surety Co. v. Northern Insurance Co. of New York,* 224 Ill. 2d 550, 557 (2007).
Id. at ¶35-¶36.

The Franchisor Defendants had a duty to protect the Plaintiff. That is what has been pled. There has been no workers' compensation paid or even offered to be paid by the Franchisor Defendants in this matter. Even if the Franchisor Defendants paid workers' compensation or offered to pay, the Franchisor Defendants would not be protected under the Act as stated by the Illinois Supreme Court in *Munoz*. The Franchisor Defendants are not the immediate employer and not entitled to the protection of 5(a). The immediate employers in this matter are Co-Defendants. For the foregoing reasons, the Franchisor Defendants' Motion to Dismiss should be denied.

## <u>CONCLUSION</u>

The Plaintiff has pled sufficient facts leading to the plausible conclusion that the Franchisor Defendants are her employer and are therefore liable for her injuries. Their arguments to the contrary are either premature or devoid of merit. As such, the Franchisor Defendants' 12(b)(6) Motion to Dismiss must be denied.

Levin, Riback & Adelman, P.C.

By:    */s/ Richard I. Levin*
Richard I. Levin, Esq.
Attorney for Plaintiff

LEVIN, RIBACK & ADELMAN, P.C.
*Attorneys for Plaintiff*
10 N. Dearborn Street, 11th Floor
Chicago, Illinois 60602
(312) 782-6717
rlevin@lralegal.com
Atty I.D. No. 6194494

| | |
|---|---|
| **From:** | Richard I. Levin |
| **To:** | Cortney Babiarz; Zachary H. Levin; Maya Kanaan; Jackson Swartout |
| **Subject:** | Budzyn, Jasmine v KFC Corporation, James Johnson Jr., et. al: Fwd: Offer Job |
| **Date:** | Thursday, March 3, 2022 4:08:02 PM |

Richard Levin
Levin, Riback and Adelman
10 N. Dearborn
11th Floor
Chicago, IL 60602
RLevin@LRALEGAL.com
312-782-6717
312-782-5128 fax
Www.LRALEGAL.com
Sent from my iPhone

Begin forwarded message:


> **From:** Jasmine Budzyn <jasmine.budzyn@gmail.com>
> **Date:** March 3, 2022 at 3:32:57 PM CST
> **To:** "Richard I. Levin" <rlevin@lralegal.com>
> **Subject: Re: Offer Job**
>
>
>
> On Thu, Sep 5, 2019 at 4:59 PM <donotreply@peoplematter.com> wrote:
>
>> Dear Jasmine,
>> KBP Foods is pleased to extend an offer of employment to you as KFC Team
>> Member at G135556 - ROMEOVILLE [IL]. You will be reporting to Tiffany x
>> Ollie.
>>
>> This offer of employment is contingent upon presenting proof of eligibility to
>> work in the United States and completion of a satisfactory reference check.
>>
>> Please bring appropriate documentation for the completion of your new hire
>> forms on your first day, including proof that you are presently eligible to work
>> in the United States for I-9 purposes. Failure to provide appropriate
>> documentation within 3 days of hire will result in immediate termination of
>> employment in accordance with the terms of the Immigration Reform and
>> Control Act.
>>
>> We look forward to you becoming a member of KBP Foods and having you
>> join our team. Please contact Tiffany x Ollie at or 556@kbpfoods.com should
>> you have any questions.

Exhibit A

Best Regards,

Tiffany x Ollie
556@kbpfoods.com



# KFC 442 N. Weber Road Online Delivery Near Me

442 N. Weber Road
Romeoville, IL 60446



**CALL**

**DIRECTIONS**

**GET A RIDE**

ORDER ONLINE

WiFi

Delivery

Closed

Permanently Closed

# Delivery and Order Ahead FAQ

+ **Is food delivery available near me?**

---

+ **Does KFC have contactless delivery?**

Exhibit B

+    **Is there a minimum amount I have to spend for food delivery?**

+    **How much does food delivery cost?**



# THE COLONEL'S CLUB

Your number one comprehensive official source for all emails related to Kentucky Fried Chicken. Join today to receive our special email offers and deals.

**SIGN UP**

# ORDER AHEAD FOR PICKUP

Good news: we also offer in-store pick-up of your KFC favorites by ordering ahead online.

ORDER PICK-UP

## KFC 442 N. Weber Road

# Online Delivery Near Me

### KFC Delivery and Order Ahead

It's easier than ever to get our world-famous chicken delivered! Simply place an order online, and we'll deliver your Kentucky Fried favorites straight to your home. We also offer contactless delivery. Need an excuse to get out of the house? You can order ahead online for pick-up at your local KFC at 442 N. Weber Road.

## Restaurants that Deliver Near Me

## KFC 15663 127th Street

**Closed** - Opens at 10:30 AM

15663 127th Street

Lemont, IL 60439

**(630) 243-1800**
**VIEW PAGE**

---

# KFC 16616 W. 159th Street

**Closed** - Opens at 10:30 AM

16616 W. 159th Street
Lockport, IL 60441

**(815) 838-9087**

**VIEW PAGE**

---

# KFC 3028 Reflection Drive

**Closed** - Opens at 10:30 AM

3028 Reflection Drive
Naperville, IL 60564

**(331) 305-6826**

**VIEW PAGE**

---

All Locations  >  IL  >  Romeoville  >  442 N. Weber Road  >  Delivery



# Kentucky Fried Chicken

116 N Larkin Avenue
Joliet, IL 60435


**CALL**


**DIRECTIONS**


**GET A RIDE**

ORDER ONLINE


WiFi


Delivery

🕐 **Closed** - Opens at 10:30 AM ⌄



# The Colonel's Club

Your number one comprehensive official source for all emails related to Kentucky Fried Chicken. Join today to receive our special email offers and deals.

### SIGN UP

## Careers at Kentucky Fried Chicken

People join our KFC family for a wide variety of reasons, but they discover so much more about themselves through our training programs, family atmosphere and the pride they have in our brand. We celebrate accomplishments (big and small) through recognition and push for the best in our restaurants. Colonel Sanders had a passion for serving great fried chicken and we make the Colonel proud every day through our service mindset and love for our brand.

**2 Job Openings At 116 N Larkin Avenue**:

KFC Team Member                                                            APPLY

KFC Shift Manager                                                          APPLY

WWW.KFC.COM

## Kentucky Fried Chicken

# 116 N Larkin Avenue

## KFC Delivery and Order Ahead

Visit your local KFC at 116 N Larkin Avenue for a fresh batch of our world's best chicken. Hand breaded and freshly prepared! Our chicken isn't made the fast way or the easy way. It's made the hard way. Each fresh batch of the world's best chicken starts with our cooks inspecting each individual piece. Then, our fresh chicken is carefully rolled 7 times in our secret blend of 11 herbs and spices before being rocked 7 times and then pressure cooked at a low temperature to preserve all the great taste we're known for around the world. From our Original Recipe® along to our Extra Crispy™ chicken, home-style sides and buttermilk biscuits, we're here to meet your chicken needs all day long. Call us at (815) 744-3499 for some freshly prepared delicious, complete family meals at affordable prices.

## Nearby Locations

## KFC 3340 Mall Loop Dr

**Closed** - Opens at 10:00 AM

3340 Mall Loop Dr
Joliet, IL 60431

**(815) 577-0362**

**VIEW PAGE**

---

## KFC 2221 Route 59

**Closed** - Opens at 10:30 AM

2221 Route 59
Plainfield, IL 60586

Plainfield, IL 60586

(815) 577-7161
VIEW PAGE

---

# KFC 16616 W. 159th Street

**Closed** - Opens at 10:30 AM

16616 W. 159th Street
Lockport, IL 60441

**(815) 838-9087**

**VIEW PAGE**

---

FIND ANOTHER LOCATION

All Locations  >  Illinois  >  Joliet  >  116 N Larkin Avenue

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 6.3.3
### Eastern Division

Jasmine Budzyn

               Plaintiff,

v.

                                  Case No.: 1:21−cv−04152

                                  Honorable Sharon Johnson Coleman

KFC, et al.

               Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, February 22, 2022:

      MINUTE entry before the Honorable Sharon Johnson Coleman: Telephone motion hearing held on 2/22/2022. Brief oral arguments held as to defendants FQSR, LLC and KBP Foods, LLC's motion to stay discovery pending consideration of motion to compel arbitration and dismiss plaintiff's complaint [53]. Over plaintiff's objections, the Court grants the motion. Defendants' motion to compel arbitration [39] is fully briefed, the Court shall take it under advisement. Mailed notice. (ym, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

Exhibit C